## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **RICHARD YOUNG,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | **Case No. 13-CV-114-JED-PJC** |
| **DISH NETWORK, LLC, d/b/a/ DISH** | ) | |
| **NETWORK, a foreign limited liability** | ) | |
| **Company; JOHN DOE # 1, an Oklahoma** | ) | |
| **entity; and JOHN DOE #2, an individual** | ) | |
| **Oklahoma Resident engaged in installing** | ) | |
| **Dish Network Equipment** | ) | |

## OPINION AND ORDER

Before the Court is defendant DISH Network, LLC's Motion for Summary Judgment (Doc. 81). The plaintiff alleges a range of frustrating sales and debt collection tactics purportedly committed by the defendant. Because the plaintiff does not identify a cognizable injury for most of his claims, however, the defendant's motion is granted in part.

### BACKGROUND

For roughly 20 years the plaintiff received satellite television service from the defendant.[1] In May of 2011, the defendant offered to upgrade the plaintiff's programming package to include channels that the plaintiff did not want. The plaintiff declined the offer, repeatedly. In the same call, the defendant tried to sell the plaintiff on new receiving equipment, which the defendant claimed would perform better than the equipment the plaintiff currently used. Again, the plaintiff declined. Finally, the defendant told the plaintiff that he would need to replace his

---

[1] The following account presents the facts in the light most favorable to the plaintiff.

receivers soon in any event, as the defendant was phasing them out.  The defendant did not reveal to the plaintiff that this process would occur over several years.[2]

Believing his receivers would soon cease to function, the plaintiff agreed to allow the defendant to replace them.  The defendant told the plaintiff this replacement would cost him between $3.00 and $4.00.  After the defendant installed the new receivers, the plaintiff signed an electronic device, purportedly to acknowledge the installation.  Although the plaintiff did not sign a contract, his name appeared on a "Dish'n It up Agreement."  Under this contract, the plaintiff ostensibly agreed to a monthly bill increase of around $20.00.

When the first bill reflecting this increase arrived, the plaintiff refused to pay as he did not recall agreeing to the new charges.  The plaintiff attempted to cancel his service and failed. He filed a complaint with the Better Business Bureau and the Oklahoma Attorney General.  A dispute resolution specialist then called the plaintiff on the defendant's behalf, but essentially directed the plaintiff to pay his bill.  The plaintiff did not and, the dispute unresolved, the defendant eventually terminated the plaintiff's service due to his failure to pay.

The defendant sent the plaintiff pre-paid boxes and labels to enable the plaintiff to return the defendant's receivers by mail.  The plaintiff, however, with new reasons to doubt the defendant's probity, worried that the defendant would not acknowledge receipt of the receivers if returned by mail.  Accordingly, he insisted that the defendant send someone to his home to retrieve them.  The defendant was happy to oblige, at a cost to the plaintiff of $95.00.  The plaintiff declined, and the defendant refused to waive the fee.

---

[2]  As recently as March 2015 the plaintiff's old receivers would still have received the defendant's emissions, the defendant's representation regarding their imminent obsolescence notwithstanding.

As a result, the receivers stayed in the plaintiff's possession.  The defendant eventually charged the plaintiff for the receivers and called the plaintiff's home daily and incessantly attempting to recover their cost.  The plaintiff wrote to the defendant demanding that it stop harassing him.  When its own tactics proved ineffective, the defendant sent the amount owed it to a debt collection company.  Ultimately, the plaintiff disconnected his phone to avoid the debt collection company's harassment.

The plaintiff sued the defendant in January of 2013.  The defendant removed the case to federal court and countersued for the cost of the receivers.  Counsel for the plaintiff returned the receivers to the defendant, and the defendant voluntarily dismissed its countersuit.

## STANDARDS

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  In considering a summary judgment motion, courts determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 at 251-52.  The evidence of the nonmovant is to be taken as true, and all justifiable inferences are to be drawn in the nonmovant's favor. *Anderson*, 477 U.S. at 255; *see also Ribeau v. Katt*, 681 F.3d 1190, 1194 (10th Cir. 2012).  "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment. . . ." *Anderson*, 477 U.S. at 255.  "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth

of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

"When the moving party has carried its burden under Rule 56[a], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (citations omitted). When the record, taken as a whole, "could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Id*. (quotations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. *Garratt v. Walker*, 164 F.3d 1249, 1251 (10th Cir. 1998).

DISCUSSION

The plaintiff asserts claims of actual fraud, constructive fraud, negligence, gross negligence, statutory deceit, and violation of the Oklahoma Consumer Protection Act, all on the basis that the defendant tricked him into replacing his satellite reception equipment and then forged his signature on a two-year contract that raised the monthly cost of its service. In addition, the plaintiff asserts a claim of invasion of privacy based on the tactics the defendant allegedly employed in attempting to recover its reception equipment from the plaintiff.

**I. Fraud**

The Supreme Court of Oklahoma has often called fraud a "generic term embracing the multifarious means . . . human ingenuity can devise . . . [to] get advantage over another by false suggestion or suppression of the truth." *See Croslin v. Enerlex, Inc.*, 308 P.3d 1041, 1045 (Okla. 2013) (compiling cases). The plaintiff seeks recovery under two different theories of fraud:

4

actual fraud and constructive fraud.   Under Oklahoma law, actual fraud is a (1) material misrepresentation, (2) knowingly or recklessly made (3) with the intent that it be relied on and (4) which substantially affects another person.   *Id.*; *Silver v. Slusher*, 770 P.2d 878, 881 n.8 (Okla. 1988) (citations omitted).   An individual commits constructive fraud under Oklahoma law by breaching a legal or equitable duty to the detriment of another.   *Croslin v. Enerlex, Inc.*, 308 P.3d 1041, 1045-46 (Okla. 2013) (compiling cases).

To make out a claim for either actual or constructive fraud, a plaintiff must have suffered damages as a result of the defendant's material misrepresentation.   *See, e.g.*, *Specialty Beverages, L.L.C. v. Pabst Brewing Co.*, 537 F.3d 1165, 1181 (10th Cir. 2008) (applying Oklahoma law); *Faulkenberry v. Kansas City S. Ry. Co.*, 602 P.2d 203, 206 (Okla. 1979).   To establish this element, the plaintiff must show not only that he suffered an injury but that the injury occurred as the result of his reliance on the defendant's misrepresentation.   *See, e.g.*, *State ex rel. Sw. Bell Tel. Co. v. Brown*, 519 P.2d 491, 495 (Okla. 1974).   The plaintiff asserts that he has been harmed because he gave up equipment that would still function today, has suffered emotional and mental distress—"including anger"—which affected his ability to work and concentrate, and has spent "considerable time . . . trying to resolve this dispute."  (Doc. 86 at 18, 14-15).

These are not cognizable injuries.  The plaintiff gave up his satellite reception equipment because the defendant planned to phase it out, although on a longer timeline than the plaintiff understood.  *Id.* at 4-5.  In Oklahoma, a plaintiff can recover damages for mental distress only where "produced by, connected with or the result of physical suffering or injury to the person enduring the mental anguish."  *Wilson v. Muckala*, 303 F.3d 1207, 1213 (10th Cir. 2002) (quoting *Ellington v. Coca Cola Bottling Co. of Tulsa*, 717 P.2d 109, 111 (Okla. 1986)).  The

plaintiff has not alleged any physical suffering connected to his anger and frustration. Finally, the time the plaintiff has spent does not constitute an injury. *See, e.g.*, *Salmon v. CRST Expedited, Inc.*, No. 14-CV-0265-CVE-TLW, 2015 WL 1395237, at *8 (N.D. Okla. Mar. 25, 2015) (finding "aggravation and loss of time . . . not a cognizable claim under Oklahoma law.").

Accordingly, the defendant's summary judgment motion is granted as to the plaintiff's claims of actual and constructive fraud.

## II. Negligence, Gross Negligence, Statutory Deceit, and the Oklahoma Consumer Protection Act

The plaintiff's claims of negligence, gross negligence, and statutory deceit, and his claim under the Oklahoma Consumer Protection Act, also require the plaintiff to have suffered some injury. *Lockhart v. Loosen*, 943 P.2d 1074, 1079 (Okla. 1997) (negligence claim requires injury); *Trinity Baptist Church v. Bhd. Mut. Ins. Servs., LLC*, 341 P.3d 75, 85 (Okla. 2014) (quoting *NMP Corp. v. Parametric Tech. Corp.*, 958 F. Supp. 1536, 1546 (N.D. Okla. 1997) ("[G]ross negligence is the same as a negligence claim, differing only as to the degree."); *Lillard v. Stockton*, 267 F. Supp. 2d 1081, 1111 (N.D. Okla. 2003) ("The basic elements of common law fraud and deceit are identical under Oklahoma law."); *Salmon*, 2015 WL 1395237, at *6 (injury required to establish violation of OCPA).

The plaintiff titles a two-page section of his response "Mr. Young Incurred Damages as a Result of Dish's Conduct." (Doc. 86 at 24). Although the plaintiff cites a number of cases for the proposition that parties are liable for the injuries they cause, tellingly he nowhere states what injury he has suffered beyond "his emotional distress." (*Id.*). The plaintiff most compellingly cites *Fuller v. Sight 'N Sound Appliance Centers, Inc.*, 982 P.2d 528 (Okla. Civ. App. 1999). "However, *Fuller* does not stand for the proposition that aggravation and loss of time is an independent claim for relief under Oklahoma law, and it merely supports an argument that

6

aggravation or loss of time could be compensable elements of damages under the OCPA." *Salmon*, 2015 WL 1395237, at *8.

Accordingly, the defendant's summary judgment motion is granted as to these claims.

## III.  Invasion of Privacy

Disputed issues of material fact that could support a finding in the plaintiff's favor exist with respect to the plaintiff's invasion of privacy claim only.   Oklahoma recognizes the common-law tort of invasion of privacy by intrusion upon a person's seclusion.  *Gilmore v. Enogex, Inc.*, 878 P.2d 360, 366 (Okla. 1994).  To prevail on his claim, the plaintiff must show a nonconsensual intrusion that a reasonable person would find highly offensive.  *Id.*

The defendant quotes *Humphrey v. U.S. Bank, N.A.*, No. 11-CV-272-GKF-PJC, 2012 WL 3686272, at *6 (N.D. Okla. Aug. 24, 2012), which itself quotes Restatement (Second) of Torts § 652B (1977), as follows: "It is only when the telephone calls are repeated with such persistence and frequency as to amount to a course of hounding the plaintiff, that becomes a substantial burden to his existence, that his privacy is invaded."  "The undisputed facts show," the defendant continues, "that, in addition to sending letters, DISH made four unsuccessful attempts to contact Plaintiff by phone in one day."  (Doc. 81 at 23).  The plaintiff disputes these undisputed facts, calling the calls "incessant."  (Doc. 86 at 13).  The persistence and frequency of the calls, as well as the burden they placed on the plaintiff's existence, are material issues of fact for the jury to resolve.

## CONCLUSION

Without a doubt, the defendant's actions, as alleged by the plaintiff, are aggravating.  To the extent that these allegations are true, he has every right to be frustrated.  Other than the purportedly incessant phone calls made to the defendant's home, however, the defendant's

alleged actions have not caused the plaintiff the type of harm necessary to support a cause of action.

**IT IS THEREFORE ORDERED** that defendant DISH Network, LLC's Motion for Summary Judgment (Doc. 81) is **granted in part** in accordance with this Opinion and Order.

**IT IS FURTHER ORDERED** that defendant DISH Network, LLC's Fourth Motion in Limine (Doc. 80) is rendered **moot**.

**SO ORDERED** this 30th day of October, 2015.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE