UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RICHARD YOUNG, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | Case No. 13-CV-114-JED-PJC |
| DISH NETWORK, LLC, d/b/a/ DISH ) | |
| NETWORK, a foreign limited liability ) | |
| Company; JOHN DOE # 1, an Oklahoma ) | |
| entity; and JOHN DOE #2, an individual ) | |
| Oklahoma Resident engaged in installing ) | |
| Dish Network Equipment ) | |

**OPINION AND ORDER**

Before the Court is the Plaintiff's Motion to Reconsider Pursuant to F.R.C.P. 54(b) (Doc. 150). The plaintiff asks the Court to reconsider its October 30, 2015 Opinion and Order (the "Summary Judgment Order" or "Order") (Doc. 148), which granted partial summary judgment to defendant DISH Network, LLC.[1] The Order did not adjudicate all claims and was not a final order or judgment within the meaning of the federal rules. Therefore, under Federal Rule of Civil Procedure 54(b), the Order "may be revised at any time before the entry of a judgment." Fed. R. Civ. P. 54(b).

Motions to reconsider are generally proper only where: (1) there has been "an intervening change in the controlling law"; (2) there is newly discovered evidence which was previously unavailable; or (3) it is necessary "to correct clear error or prevent manifest injustice." *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000); *Tomlinson v. Combined Underwriters Life Ins. Co.*, 684 F. Supp. 2d 1296, 1299 (N.D. Okla. 2010). "Thus, a motion for

---

[1] The Summary Judgment Order is incorporated herein by reference, and familiarity with that Order is assumed.

reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law." *Servants of Paraclete*, 204 F.3d at 1012 (10th Cir. 2000).

The Court granted summary judgment as to the plaintiff's fraud, deceit, and negligence claims on the basis that the "plaintiff has not alleged any physical suffering connected to his anger and frustration." (Doc. 148 at 5-6). This formulation was overbroad. Physical suffering is a necessary condition for a negligence claim, but only a sufficient one for an intentional tort. *Worsham v. Nix*, 145 P.3d 1055, 1071-72 (Okla. 2006) (in spite of the absence of a claim for economic damages, damages for emotional distress recoverable when the natural and probable consequence of actual fraud); *Cleveland v. Dyn-A-Mite Pest Control, Inc.*, 57 P.3d 119, 131 (Okla. Civ. App. 2002) ("emotional distress as a consequence of an intentional tort is distinguishable from distress resulting from breach of contract or negligence, which requires a showing of physical injury." (alteration omitted)).[2] To say that intentional torts require physical suffering is to deny the antecedent—that is, while it is true that the addition of physical suffering to the plaintiff's anger would salvage the plaintiff's fraud claim by rendering his injury cognizable, it does not therefore follow that the absence of physical suffering dooms his claims.[3] Properly stated, the Court grants summary judgment as to these claims on the grounds that "mere anger" is not a cognizable injury sufficient to support a claim of negligence, fraud, or deceit.

---

[2] The plaintiff did not brief this argument in his Response in opposition to summary judgment, and instead grouped his fraud, negligence, and invasion of privacy claims together. (Doc. 86 at 24-25). Nonetheless, as the distinction has now been brought to the Court's attention, the Court takes this opportunity to clarify the basis for its decision.

[3] The logical fallacy of denying the antecedent is demonstrated by the following example: "Because it's not cold outside, it's not snowing. It is now cold outside, therefore it must be snowing." *Agri Processor Co. v. N.L.R.B.*, 514 F.3d 1, 6 (D.C. Cir. 2008) (citing Patrick J. Hurley, A Concise Introduction to Logic 323 (9th ed.2005)).

The plaintiff concedes that his anger alone cannot support his negligence claims. (Doc. 150 at 2 n.2). He contends, however, that evidence of his mere anger is sufficient to resist the defendant's summary judgment motion with respect to his fraud and deceit claims. The plaintiff is correct that "emotional distress caused by a willful, actionable tort is recoverable, even absent physical injury, if it is the natural and probable consequence of the tortious act." *Cleveland v. Dyn-A-Mite Pest Control, Inc.*, 57 P.3d 119, 131 (Okla. Civ. App. 2002) (quotation omitted). However, even in the case of intentional torts a plaintiff must demonstrate more than mere anger to meet the tort's injury element.

This a plaintiff may do in a number of ways. Commonly, as noted, a plaintiff provides evidence of a physical injury that either resulted from or caused the emotional distress. *See, e.g.*, *Wilson v. Muckala*, 303 F.3d 1207, 1213 (10th Cir. 2002) (quoting *Ellington v. Coca Cola Bottling Co. of Tulsa*, 717 P.2d 109, 111 (Okla. 1986)). Where, as here, a plaintiff has suffered no physical injury, he is not without options. He may demonstrate, for example, that his anger is accompanied by other damages, such as economic injury or damage to property. *Dyn-A-Mite Pest Control, Inc.*, 57 P.3d at 131 (compensable "[e]motional distress . . . a natural and probable consequence of purchasing and living in a home which, unbeknownst to the purchaser, has been extensively damaged by termites and has extensive live infestation of termites"). If, as here, the defendant's alleged conduct has not harmed the plaintiff in any way beyond his emotional distress, one path remains open to the plaintiff: he must demonstrate that his emotional distress is severe and caused by extreme and outrageous conduct.

To be clear, extreme and outrageous conduct and severe emotional distress, like physical harm or damage to property, are sufficient to redeem the plaintiff's claim but not necessary. They are different routes to the same end. "[W]here mental suffering is alleged to be one of the

items of damage resulting from an otherwise actionable transgression, recovery of damages for that aggravation does not require either 'severe' mental distress or 'outrageous' conduct to be actionable, as explained in *Gruenberg v. Aetna Ins.*, [510 P.2d 1032, 1040-41 (Cal. 1973)]." *Timmons v. Royal Globe Ins. Co.*, 653 P.2d 907, 916 (Okla. 1982). As *Timmons* makes clear, purported emotional distress need not be severe, nor the defendant's misconduct outrageous, for the plaintiff to recover damages for emotional distress—so long as the conduct is "otherwise actionable" and the emotional distress is but "one of the items of damage." *Id.* Standing alone, however, mere anger is not enough. The point is that some other interest must have been invaded.

In Oklahoma, the notion that a plaintiff can recover emotional distress damages that naturally and probably result from willful tortious conduct originates in *Mashunkashey v. Mashunkashey*, 113 P.2d 190, 191 (Okla. 1941). There, in an oft-quoted passage, the Supreme Court of Oklahoma explained as follows:

> [M]ental pain and suffering alone will ordinarily constitute but an element of damages. The latter is seldom a sufficient basis upon which to predicate an action. Usually it is compensable only when made an element of damages in an action based upon a wrong which in itself is actionable. But mental pain and suffering may constitute the basis of an independent action in cases of wil[l]ful wrong of the character where mental suffering is recognized as the ordinary, natural and proximate result of such wrong.

*Id.* (citations omitted). The Supreme Court has since characterized *Mashunkashey*, an action for fraud in inducing the plaintiff into a bigamous marriage, as "an early precursor to intentional infliction of emotional distress." *Miller v. Miller*, 956 P.2d 887, 901 n.42 (Okla. 1998). *Mashunkashey* did not explain how courts were to determine when mental suffering was the ordinary and natural result of an intentional tort. Since *Mashunkashey*, however, the Supreme Court of Oklahoma has "adopt[ed] the language of Comment d to § 46 of the Restatement

(Second) of Torts to describe the type of 'willful wrong' generally recognized to ordinarily and naturally result in mental suffering." *Id.* (citing *Dean v. Chapman*, 556 P.2d 257 (Okla. 1976)). In *Dean v. Chapman*, for example, where the plaintiff sued the state Chief Medical Examiner for performing an autopsy on her father outside and in view of the public, the Supreme Court relied on Comment d to § 46 of the Restatement to determine whether the plaintiff had alleged a recoverable wrong under *Mashunkashey*. 556 P.2d at 261. Because the medical examiner's conduct was not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community," the Supreme Court held that the conduct was "not the type of wrong which is recognized to ordinarily and naturally result in mental suffering." *Id.* (quoting Restatement (Second) of Torts § 46 cmt. d (1965)). The same is true here: the defendant's alleged conduct was not so outrageous that severe mental suffering would naturally and probably occur as a consequence. Accordingly, the plaintiff's anger would be compensable only as an element of damages in an otherwise actionable tort. *Mashunkashey*, 113 P.2d at 191.

The plaintiff, Mr. Young, asserts that he "was harmed by Dish's actions causing mental distress including anger and upset." (Doc. 86 at 14). As evidence of his emotional distress, he cites his own deposition testimony, including the following:

> Q. Okay. So you were mad when you wrote this first email [complaint to DISH]?
> A. [BY MR. YOUNG] No, I wasn't mad.
> Q. Okay.
> A. It just upset me that they were doing that. . . . Upset. Not mad. Different.

(Doc. 86-1 at 72:9-19).

> Q. Okay. Were you upset that he was asking you for your information?
> A. No, I was upset that I was getting the run-around. He didn't ask—answer my question.

5

...

(*Id.* at 74:8-11).

> Q. . . . So I guess the question is how have these matters affected you?
> A. Stuff like this just infuriates me.
> Q. I can tell.
> A. You know, and gets me so damn angry, and that makes me angry. You talk about angry, I was just disgusted before and upset. This ticked me off like you wouldn't believe that a national company like Dish Network would commit, and I'm telling you that's criminal what they've done. This—I get so damn mad when I think about it I can't even think about anything else.
> Q. Okay. So as far as affecting you, it's made you very angry?
> A. Not only has it made me angry, it's affected my work. I mean, I sat down there to write those letters, and for two or three days I'm so upset I can't even concentrate at work.

(*Id.* at 132:6-23). Based on this evidence, the plaintiff argued that the defendant's alleged misconduct injured him by angering him, eventually to the point where "it affected his work and concentration." (Doc. 86 at 14-15). Nowhere in his Response in opposition to the defendant's summary judgment motion (Doc. 86) or his Motion to Reconsider (Doc. 150), however, does the plaintiff argue that his emotional distress was severe or that the defendant's alleged conduct exceeded all possible bounds of decency—an argument the defendant raised both in its Motion for Summary Judgment (Doc. 81 at 17-18) and in it Response to the plaintiff's Motion to Reconsider (Doc. 153 at 8-10). To the latter, the plaintiff filed no Reply whatsoever, much less one contesting the defendant's arguments that its alleged conduct could not be characterized as "utterly intolerable in a civilized society" or that the plaintiff's emotional distress was not severe enough to permit recovery.

The Court, viewing the facts in the light most favorable to the plaintiff, finds that the plaintiff suffered mere anger as the result of the defendant's alleged conduct. His anger neither caused nor was caused by a physical injury. It was not accompanied by economic injury or damage to property. It did not constitute but one of the items of damage resulting from an independently actionable transgression. And nothing indicates that the plaintiff's anger was

severe, or that the defendant's alleged conduct was so outrageous as to be the "type of wrong . . . recognized to ordinarily and naturally result in mental suffering." *Dean*, 556 P.2d at 261; *see also Worsham v. Nix*, 145 P.3d 1055, 1071-72 (Okla. 2006) (compensable emotional distress where wife learned that lawyer, contrary to his representations, had not filed workplace harassment lawsuit on behalf of husband prior to husband's suicide). Lacking any of these supplements, mere anger is insufficient to meet the injury element of the plaintiff's fraud and deceit claims. Accordingly, the Court declines to revive these claims.

This decision is consistent with Section 46 of the Restatement. Courts traditionally have limited the recovery of damages for mental and emotional distress—whether by requiring evidence of a physical injury, economic harm, or severe distress caused by outrageous conduct—out of a concern that permitting recovery for such damages would open the door to fictitious claims and litigation in the field of trivialities. As Comment b to Section 46 has it, explaining the special status of claims of intentional infliction of emotional distress and differentiating them from other torts, "[b]ecause of the fear of fictitious or trivial claims, distrust of the proof offered, and the difficulty of setting up any satisfactory boundaries to liability, the law has been slow to afford independent protection to the interest in freedom from emotional distress standing alone." Restatement (Second) of Torts § 46 cmt. b (1965). Physical or economic injury, damage to property, severe distress—these are all methods for reducing the danger of fictitious or trivial claims and of opening the proverbial floodgates of litigation. Under the Restatement, the tort of intentional infliction of emotional distress permits recovery for emotional distress standing alone, but only where additional elements—severity and outrageousness—are met. *Id.* In all other cases, emotional distress remains but "an element of damages . . . where other interests have been invaded, and tort liability has arisen apart from the emotional distress." *Id.*

7

The plaintiff has not alleged that the defendant's conduct invaded any interest or caused him any harm beyond his anger. Nor has he alleged that tort liability would have arisen apart from his anger. There are no circumstances that might assuage the concerns that preceded the adoption of the tort of intentional infliction of emotional distress, or that caused courts to limit recovery to situations in which the distress was severe and the conduct outrageous—"the difficulty of proving causation, the danger of fraudulent claims, and the fear of a flood of litigation." *Miller v. Miller*, 956 P.2d 887, 899 (Okla. 1998). Lacking these assurances, the plaintiff's claim cannot lie.

For the same reasons, the plaintiff's claim under the Oklahoma Consumer Protection Act (the "OCPA") must fail. In his motion to reconsider, the plaintiff renews his argument that *Brashears v. Sight 'N Sound Appliance Centers, Inc.*, 981 P.2d 1270 (Okla. Civ. App. 1999) and *Fuller v. Sight 'N Sound Appliance Centers, Inc.*, 982 P.2d 528 (Okla. Civ. App. 1999) stand for the proposition that a plaintiff may bring a claim under the OCPA asserting no more than aggravation and loss of time. In neither *Brashears* nor *Fuller*, however, did the Court of Civil Appeals so hold. The plaintiffs in *Brashears* and *Fuller* sought damages for emotional distress in addition to travel and telephone expenses, loss of time, the difference in price between what the defendant advertised and what the plaintiffs ultimately purchased, and, in *Fuller*, the value of ruined food and repair expenses. *Brashears*, 981 P.2d at 1274; *Fuller*, 982 P.2d at 533. Given these other economic and property injuries, the appellate court declared itself "unpersuaded by [the defendant's] argument that [the plaintiffs'] alleged loss of time, inconvenience, travel and telephone expenses may not be considered as 'actual damages.'" *Brashears*, 981 P.2d at 1274; *see also Fuller*, 982 P.2d at 533. The court was unpersuaded, it explained, in light of a series of Oklahoma Supreme Court opinions, and one opinion of the Oklahoma Court of Civil Appeals,

that "have allowed the recovery of such damages in tort actions in the past." *Brashears*, 981 P.2d at 1274; *see also Fuller*, 982 P.2d at 533. These cases, and the *Brashears* and *Fuller* Court's explanation of them, make clear the limits of *Brashears* and *Fuller*.

None of the cases relied on in *Brashears* and *Fuller* addressed solely emotional distress, and each involved economic damages or damage to property.[4] To begin with, *Williamson v. Fowler Toyota, Inc.* based its relevant holding on the "wanton and reckless disregard" of the plaintiff's property rights, including the destruction of the lock securing his business's gate—a fact noted in *Brashear*'s and *Fuller*'s explanatory parenthetical. 956 P.2d 858, 863-64 (Okla. 1998). The plaintiffs in *City of New Cordell v. Lowe* sought damages for physical discomfort, inconvenience, and loss of time resulting from and in addition to damage caused by "raw sewage . . . inundating [their home's] floors with about 4 inches of watery, foul-smelling refuse." 389 P.2d 103, 104 (Okla. 1963). *Reliable Mut. Hail Ins. Co. v. Rogers* arose from a wrongful attachment of property, and plaintiffs could recover attorneys' fees and loss of time in addition to "the reasonable value of the property destroyed or taken under the attachment and of which they were ultimately deprived." 160 P. 914, 916 (Okla. 1916). Finally, in *Barnes v. McKinney*, "as a natural and probable consequence of defendant's willful tortious act, plaintiff suffered the loss of time and inconvenience incident to filing a lawsuit" to recover $4,000 lost as a result of the defendant's fraud. 589 P.2d 698, 702 (Okla. Civ. App. 1978).

These cases are a far cry from the plaintiff's. *Brashears* and *Fuller* support an argument that the plaintiff's anger could be a compensable element of damages under the OCPA where, as

---

[4] And logically so. The plaintiff argued, citing *Brashears* and *Fuller*, that "Oklahoma Courts have interpreted . . . [OCPA] damages to include forms of damages that Oklahoma Courts allow to be recovered in tort actions." (Doc. 86 at 25). And in fact the cases the *Brashears* and *Fuller* Court relied on were Oklahoma tort law cases under which, as noted above, mere anger does not suffice to make out a tort's injury element.

with the rest of Oklahoma tort law, other interests have been invaded, and tort liability has arisen apart from the emotional distress. That is not the case here. As the plaintiff has not alleged that other interests have been invaded or that his distress was severe, and as liability under the OCPA would not arise apart from his emotional distress, his claim under the OCPA must fail.

**IT IS THEREFORE ORDERED** that the plaintiff's Motion to Reconsider (Doc. 150) is **denied**, and the Court's Summary Judgment Order (Doc. 148) is hereby **supplemented** and **clarified** consistent with this Opinion and Order.

**SO ORDERED** this 23rd day of December, 2015.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE